UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| REGINALD R. THOMAS, | 1:17-cv-01592-AWI-GSA-PC |
| Plaintiff, | **FINDINGS AND RECOMMENDATIONS, RECOMMENDING THAT THIS CASE BE DISMISSED, WITH PREJUDICE, FOR FAILURE TO STATE A CLAIM UNDER <u>BIVENS</u>** |
| vs. | |
| ANDRE MATEVOUSIAN, et al., | |
| Defendants. | **(ECF No. 16.)** |
| | **OBJECTIONS, IF ANY, DUE WITHIN FOURTEEN DAYS** |

## I. BACKGROUND

Reginald R. Thomas ("Plaintiff") is a federal prisoner proceeding *pro se* and *in forma pauperis* with this civil rights action pursuant to <u>Bivens vs. Six Unknown Agents</u>, 403 U.S. 388 (1971). On November 30, 2017, Plaintiff filed the Complaint commencing this action. (ECF No. 1.) On March 21, 2018, the court screened the Complaint and issued an order dismissing the Complaint for violation of Rule 8 of the Rules of Civil Procedure, with leave to file an amended complaint not exceeding twenty-five pages. (ECF No. 10.) On May 14, 2018, Plaintiff filed a First Amended Complaint, which is now before the court for screening. (ECF No. 16.)

## II. SCREENING REQUIREMENT

The court is required to screen complaints brought by prisoners seeking relief against a governmental entity or officer or employee of a governmental entity. 28 U.S.C. § 1915A(a). The

court must dismiss a complaint or portion thereof if the prisoner has raised claims that are legally "frivolous or malicious," that fail to state a claim upon which relief may be granted, or that seek monetary relief from a defendant who is immune from such relief. 28 U.S.C. § 1915A(b)(1),(2). "Notwithstanding any filing fee, or any portion thereof, that may have been paid, the court shall dismiss the case at any time if the court determines that the action or appeal fails to state a claim upon which relief may be granted." 28 U.S.C. § 1915(e)(2)(B)(ii).

A complaint is required to contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). Detailed factual allegations are not required, but "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (citing Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555 (2007)). While a plaintiff's allegations are taken as true, courts "are not required to indulge unwarranted inferences." Doe I v. Wal-Mart Stores, Inc., 572 F.3d 677, 681 (9th Cir. 2009) (internal quotation marks and citation omitted). To state a viable claim, Plaintiff must set forth "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Iqbal, 556 U.S. at 678-79; Moss v. U.S. Secret Service, 572 F.3d 962, 969 (9th Cir. 2009). While factual allegations are accepted as true, legal conclusions are not. Id. The mere possibility of misconduct falls short of meeting this plausibility standard. Id.

### III. SUMMARY OF FIRST AMENDED COMPLAINT

Plaintiff is presently incarcerated at the United States Penitentiary (USP)-Atwater in Atwater, California, in the custody of the Federal Bureau of Prisons (BOP), where the events at issue in the First Amended Complaint allegedly occurred. Plaintiff names as defendants Andre Matevousian (Warden), Mary M. Mitchell (Western Regional Director), Ms. Cassidy (Administrative Remedy Coordinator), Ms. Ciufo (Disciplinary Hearing Officer), Mr. Fields (Special Investigations Administrator), Lieutenant Hayes (Special Investigations Specialist), Mr. Copus (Trust Fund Manager), Ms. Gardea (Special Investigations Administrator), Mr. Larson (Correctional Officer), Mr. Lyons (Counselor), Mr. Padgett (Case Manager), and Mr. Lopez (Correctional Officer) (collectively, "Defendants").

A summary of Plaintiff's allegations follows.

**<u>Placement in the SHU, Lost Privileges</u>**

On November 18, 2016, a box arrived bearing Plaintiff's name and number, shipped from Phoenix and allegedly containing five cell phones and approximately sixteen ounces of tobacco. Plaintiff was called to pick up the package and was met at the door of Receiving and Discharge (R&D) by defendant C/O Larson, who handed Plaintiff a blank property slip and told him to sign it. Defendant Larson asked Plaintiff to step into a holding cell. Larson left and returned with defendants Fields and Lopez, who stepped into the holding cell and questioned Plaintiff about the package. Plaintiff denied any knowledge of the package. Defendant Fields escorted Plaintiff to the SHU where he was placed under investigation.

On November 21, 2016, Plaintiff was interviewed by defendant Lt. Hayes about the package. Plaintiff again denied any knowledge of it.

On December 20, 2016, defendants Warden Matevousian, Fields, Hayes, and others were doing rounds in the SHU. Plaintiff asked Hayes how his investigation was going and Hayes responded that the investigation was complete and that he would be released from the SHU soon. The Warden arrived and told Plaintiff he had signed off on his investigation that morning. On December 22, 2016, Plaintiff was released from the SHU without an incident report and moved to unit 6B.

The next morning, Plaintiff inquired about having his trust fund account released from encumbrance, and the Warden said, "You got a shot" (meaning an incident report). ECF No. 16 at 7.[1] Plaintiff denied receiving an incident report and the Warden said, "Yes, you did, for trying to bring cell phones in my institution." ECF No. 16 at 7. The Warden left, went to the Lieutenant's office and had defendant Gardea file Plaintiff's incident report. Plaintiff was given the report and taken back to the SHU.

///

---

[1] All page numbers cited herein are those assigned by the court's CM/ECF system and not based on the Plaintiff's pagination of the complaint.

About two months later, on February 3, 2017, Plaintiff went before the Disciplinary Hearing Officer, Ms. Ciufo, for a ten-minute hearing where he was found guilty of the incident based on photos of the cell phones and tobacco, and the signed property form which was no longer blank.

On April 3, 2017, Plaintiff appealed his conviction. On March 15, 2018, the incident report was expunged.

Plaintiff alleges that defendants Matevousian, Mitchell, Ciufo, Fields, Hayes, Gardea, Larson, and Lopez conspired to trick Plaintiff into signing a blank property form to establish Plaintiff's guilt. Matevousian placed Plaintiff in the SHU without probable cause. Gardia filed a false and misleading incident report. Mitchell was complicit in not investigating Plaintiff's claims in his prison appeals.

Plaintiff suffered loss of liberty, privileges, and quality of life in the SHU. He was confined twenty-three hours a day in a sixty-feet-square cell for five months. He was deprived of most of his personal property and the ability to work, attend educational and vocational programs, watch television, associate with other prisoners, attend outdoor recreation, engage in sports, attend meals with other prisoners, attend religious services, use the phone, and attend the commissary. Plaintiff also suffered emotional harm.

**Basic Supplies and Retaliation**

On May 12, 2017, USP-Atwater was placed on lockdown. At the time of the lockdown, Plaintiff was on indigent status. On May 16, 2017, Plaintiff advised his counselor, defendant Lyons, that he was on indigent status and needed basic necessities such as soap, toothpaste, deodorant, razors, shampoo, writing paper, and envelopes. Lyons said he would check out the supplies.

Six days later, Plaintiff asked defendant Lyons about the supplies, and Lyons got upset and told Plaintiff, "I don't have them in my pocket." ECF No. 16 at 24. Plaintiff filed a complaint against defendant Lyons, and Lyons began to retaliate against Plaintiff.

During the next forty days Plaintiff made several requests, including to defendants Lyons, Padgett, and Copus, but was unable to get his supplies. On June 14, 2017, when defendant Lyons

4

made rounds in the unit, Plaintiff stopped him at his cell door, but Lyons said he was only seeing unit orderlies. Plaintiff was a unit orderly, as Lyons well knew because Lyons had hired Plaintiff as a unit orderly on May 10, 2017, which put Plaintiff under the supervision of defendant Lyons. It turned out that Lyons had hired Plaintiff for nefarious reasons, because on June 9, 2017, Lyons submitted a pay list to the trust fund department paying his orderlies, and Plaintiff was paid $6.00 for the month of May. This was a farce designed by Lyons to justify not having provided Plaintiff with indigent supplies because Lyons took Plaintiff off of indigent status by paying him $6.00. Inmates with $6.00 or more in their accounts during a thirty-day period are not considered indigent. Thus, Plaintiff would have to pay for supplies. Records will show that Plaintiff was paid for work he did not do because Lyons posted Plaintiff's job on May 10, 2012, and the prison went on lock down on May 12, 2017. BOP rules prohibit paying inmates for work they did not perform. During the entire forty-two days the prison was on lockdown, Plaintiff did not receive basic necessities.

Defendants Warden Matevousian and Mitchell failed to intercede with their subordinates, which violated Plaintiff's rights to necessities. Defendant Copus refused Plaintiff's request on June 6, 2017, for supplies, depriving Plaintiff of basic human necessities required by law. Plaintiff suffered emotional distress.

Defendant Lyons also denied Plaintiff complaint forms to prevent Plaintiff from redressing his grievances, and conspired with others to obstruct Plaintiff's right to access the courts.

**Access to Courts -- Administrative Appeals Process**

Under the PLRA, Plaintiff is required to exhaust his administrative remedies before bringing suit, and inmates are required to follow the BOP's procedures when filing a complaint. 42 U.S.C. § 1997e et seq., There are four levels to the process, BP-8, BP-9, BP-10, and BP-11. Plaintiff has filed more than twenty-five administrative complaints. Plaintiff's rights to access the courts were violated during the appeals process because his appeals were often rejected based on the rationale of defendant Cassidy, Administrative Remedy Coordinator, without just cause.

///

Defendants Lyons, Cassidy, Matevousian, and Mitchell have used various methods to hinder Plaintiff from redressing his grievances and therefore denying him access to the courts.

On May 22, 2017, Plaintiff filed a BP-8 complaint against defendant Lyons. Ordinarily Lyons has five days in which to respond, but Plaintiff did not receive his complaint back until two months later.

On June 22, 2017, Plaintiff filed five BP-8 complaints, which were not returned to him until a month later. Plaintiff requested a memo from defendant Lyons to reflect that Plaintiff was not the cause for late appeals, but Lyons refused. Consequently, Plaintiff's appeals were rejected as untimely.

Lyons frequently stamps Plaintiff's complaints with the instructions, "You must first make an effort to informally resolve and list staff contacted before filing a BP-9." ECF No. 16 at 15. Plaintiff alleges this is wholly incorrect because the BP-8 form does not require this. Defendants Cassidy, Warden Matevousian, and Regional Director Mitchell support Lyons in this erroneous claim. Lyons is erroneously interpreting the instructions. As a result, Lyons holds Plaintiff's BP-8 forms longer than a reasonable amount of time and returns them without investigation with the stamped statement.

On August 4, 2017, Plaintiff spoke to defendant Cassidy about his rejected complaints and explained how defendant Lyons was incorrectly processing them. Defendant Cassidy suggested that Plaintiff talk to Lyons again. Plaintiff spoke to Lyons again, and Lyons still refused to provide a memo.

On September 1, 2017, Plaintiff received notification from the Western Regional Office that his complaint #909751-R1 was delivered back to USP-Atwater for further review. In this complaint, Plaintiff showed that defendant Lyons was committing fraud on the BOP by turning in pay slips to pay Plaintiff for work he never performed. This complaint somehow mysteriously disappeared.

Other complaints were either delayed by Defendants, never responded to, or just came up missing. On November 17, 2017, defendant Lyons returned three complaints to Plaintiff which had been responded to on October 15, 2017, October 24, 2017, and October 31, 2017. Plaintiff

had twenty days in which to appeal these complaints. Two of them were already out of time, and the third one was due in three days. Defendant Lyons refused to provide Plaintiff with a memo.

Plaintiff filed a complaint to the Warden's office concerning defendant Lyons' delays in returning complaints and his refusal to provide Plaintiff with a memo showing it was staff's fault. The Warden responded that Plaintiff must file a BP-8 before filing a BP-9 to his office.

**Relief**

Plaintiff requests monetary damages for emotional harm, injunctive and declaratory relief, and attorney's fees and costs.

**IV.     PLAINTIFF'S CLAIMS**

Plaintiff brings Bivens claims under the First, Fifth, and Eighth Amendments.

**A.     Bivens**

A Bivens action is the federal analog to suits brought against state officials under 42 U.S.C. § 1983. Hartman v. Moore, 547 U.S. 250, 126 S.Ct. 1695 (2006). The basis of a Bivens action is some illegal or inappropriate conduct on the part of a federal official or agent that violates a clearly established constitutional right. Baiser v. Department of Justice, Office of U.S. Trustee, 327 F.3d 903, (9th Cir. 2003). "To state a claim for relief under Bivens, a plaintiff must allege that a federal officer deprived him of his constitutional rights." Serra v. Lappin, 600 F.3d 1191, 1200 (9th Cir. 2010) (citing see Shwarz v. United States, 234 F.3d 428, 432 (9th Cir. 2000). A Bivens claim is only available against officers in their individual capacities. Morgan v. U.S., 323 F.3d 776, 780 n.3 (9th Cir. 2003); Vaccaro v. Dobre, 81 F.3d 854, 857 (9th Cir. 1996). "A plaintiff must plead more than a merely negligent act by a federal official in order to state a colorable claim under Bivens." O'Neal v. Eu, 866 F.2d 314, 314 (9th Cir. 1988). Prisoners proceeding *pro se* in civil rights actions are entitled to have their pleadings liberally construed and to have any doubt resolved in their favor. Hebbe v. Pliler, 627 F.3d 338, 342 (9th Cir. 2010) (citations omitted).

Relief under Bivens does not encompass injunctive and declaratory relief where the equitable relief sought requires official government action. Solida v. McKelvey, 820 F.3d 1090, 1093-94 (9th Cir. 2016). Bivens is both inappropriate and unnecessary for claims seeking solely

7

equitable relief against actions by the federal government; by definition, Bivens suits are individual capacity suits and thus cannot enjoin official government action. Id. at 1094-95. Therefore, Plaintiff is not entitled to injunctive or declaratory relief in this action.

A Bivens claim is brought against the individual official for his or her own acts, not the acts of others. Ziglar v. Abbasi, 137 S. Ct. 1843, 1860 (2017). Bivens is not designed to hold officers responsible for acts of their subordinates. Id. Government officials may not be held liable, under § 1983 or a Bivens action, for unconstitutional conduct of their subordinates under a theory of *respondeat superior*. Ashcroft v. Iqbal, 556 U.S. 676 (2009).

**Bivens After Ziglar v. Abbasi**

"The Supreme Court has recently made clear that 'expanding the Bivens remedy is now a disfavored judicial activity,' and has 'consistently refused to extend Bivens to any new context or new category of defendants.'" Buenrostro v. Fajardo, 1:14-cv-00075-DAD-BAM (PC), 2017 WL 6033469, at *2 (E.D. Cal. Dec. 5, 2017) (quoting Ziglar, 137 S.Ct. at 1857). "Ziglar sets forth a two-part test to determine whether a Bivens claim may proceed." Buenrostro, 2017 WL 6033469, at *2. "A district court must first consider whether the claim presents a new context from previously established Bivens remedies." Id. "If so, it must then apply a 'special factors' analysis to determine whether 'special factors counsel hesitation' in expanding Bivens absent affirmative action by Congress." Id. (quoting Ziglar, 137 S.Ct at 1857, 1875.)

"'If [a] case is different in a meaningful way from previous Bivens cases decided by [the Supreme Court], the context is new.'" Buenrostro, 2017 WL 6033469, at *2 (quoting Ziglar, 137 S.Ct. at 1859). "Ziglar provides several examples of differences meaningful enough to make a given context a new one, including 'the constitutional right at issue.'"[2] Buenrostro at *2 (quoting Ziglar at 1860). "To date, the Supreme Court has only recognized a Bivens remedy in the context

---

[2] "A case might differ in a meaningful way because of the rank of the officers involved; the constitutional right at issue; the generality or specificity of the official action; the extent of judicial guidance as to how an officer should respond to the problem or emergency to be confronted; the statutory or other legal mandate under which the officer was operating; the risk of disruptive intrusion by the Judiciary into the functioning of other branches; or the presence of potential special factors that previous Bivens cases did not consider." Ziglar, 137 S. Ct. at 1860.

of the Fourth, Fifth, and Eighth Amendments." See Bivens, 403 U.S. 388 (Fourth Amendment prohibition against unreasonable searches and seizures); Davis v. Passman, 442 U.S. 228 (1979) (Fifth Amendment gender-discrimination); Carlson v. Green, 446 U.S. 14 (1980) (Eighth Amendment Cruel and Unusual Punishments Clause for failure to provide adequate medical treatment).

The Supreme Court has "consistently refused to extend Bivens to any new context or new category of defendants." Ziglar, 137 S.Ct. at 1857. If a claim presents a new context in Bivens, then the court must consider whether there are special factors counseling against extension of Bivens into this area. Id. The Supreme Court's precedents "now make clear that a Bivens remedy will not be available if there are 'special factors counselling hesitation in the absence of affirmative action by Congress.'" Id. "[I]f there is an alternative remedial structure present in a certain case, that alone may limit the power of the Judiciary to infer a new Bivens cause of action." Id.

Since Ziglar v. Abassi, the Ninth Circuit has found a Bivens remedy available in three situations. See Brunoehler v. Tarwater, No. 16-56634, 2018 WL 3470210 (9th Cir. July 19, 2018) (Fourth Amendment - arrest by Agents in home without probable cause); Rodriguez v. Swartz, 899 F.3d 719, 744 (9th Cir. 2018) (Fourth Amendment - unjustifiable cross-border killing of someone simply walking down a street in Mexico); and Lanuza v. Love, 899 F.3d 1019, 1034 (9th Cir. 2018) (Fifth Amendment due process - government attorney intentionally submitted a forged document in an immigration proceeding to completely bar an individual from pursuing relief to which he was entitled).

**B.     First Amendment Claims -- Access to Courts and Retaliation**

Plaintiff claims that he was retaliated against because he filed administrative complaints at USP-Atwater. Plaintiff also claims that his right to access the courts was violated during the administrative complaint process at USP-Atwater. These claims are brought under the First Amendment.

Here, Plaintiff seeks to extend a Bivens remedy for violations of the First Amendment through both retaliation and denial of access to courts. The Supreme Court has never implied a

Bivens action under any clause of the First Amendment. See Reichle v. Howards, 566 U.S. 658, 663 n.4 (2012) ("We have never held that Bivens extends to First Amendment claims."). As Plaintiff's First Amendment claims clearly present new contexts in Bivens, this requires the consideration of any special factors counseling against extension of Bivens into these areas, including whether there is any alternative, existing process for protecting Plaintiff's interests.

While the Ninth Circuit has previously held that Bivens may be extended to First Amendment claims, Gibson v. United States, 781 F.2d 1334, 1342 (9th Cir. 1986) (permitting First Amendment retaliation claim under Bivens); Moss, 572 F.3d at 967 n.4 (noting Bivens extends to First Amendment damages claims), it has recently revisited this question in light of Ziglar, see Vega v. United States, 881 F. 3d 1146, 1154 (9th Cir. Feb. 7, 2018) (declining to extend Bivens remedy to First Amendment access to courts and Fifth Amendment procedural due process claims against private employees of residential reentry center), Reid v. United States, No. 114CV01163LJOMJSPC, 2018 WL 1588264, at *1–3 (E.D. Cal. Apr. 2, 2018). These earlier Ninth Circuit cases are therefore not controlling.

As discussed in Ziglar, "the existence of alternative remedies usually precludes a court from authorizing a Bivens action." Winstead v. Matevousian, No. 117CV00951LJOBAMPC, 2018 WL 2021040, at *2–3 (E.D. Cal. May 1, 2018), objections overruled, No. 117CV00951LJOBAMPC, 2018 WL 3357437 (E.D. Cal. July 9, 2018) (quoting Ziglar, 137 S.Ct. at 1865). It is clear that Plaintiff had alternative remedies available to him, including the Bureau of Prisons administrative grievance process, a federal tort claims action, the filing of a writ of habeas corpus, Winstead, 2018 WL 3357437, at *2, and Bivens claims to the extent that any alleged retaliation or denial of access to courts took the form of conduct that has already been determined by the Supreme Court to be actionable under Bivens, Reid, 2018 WL 1588264, at *1–3 (citing see Vega, 881 F. 3d at 1154 (availability of administrative remedies and tort claims counseled against extending Bivens remedy); Buenrostro, 2017 WL 6033469, at *2-4 (declining to infer Bivens remedy for First Amendment retaliation claim). Additionally, where a prisoner faces ongoing retaliation, he may seek injunctive relief. See 18 U.S.C. § 3626(a)(2); Corr. Servs. Corp. v. Malesko, 534 U.S. 61, 74 (2001) (observing that injunctive relief has long been

recognized as proper means for altering unconstitutional policy); Solida, 820 F.3d at 1096 (noting a waiver of sovereign immunity under the Administrative Procedure Act for injunctive relief)). Indeed, Plaintiff alleges that he utilized the administrative grievance process in an effort to resolve his claims.

For the foregoing reasons, the court finds that special factors counsel hesitation in these new contexts, and declines to find an implied Bivens cause of action for First Amendment retaliation or First Amendment denial of access to courts. Winstead, 2018 WL 2021040, at *2–3 (citing see, e.g., Free v. Peikar, 2018 WL 1569030, at *2 (E.D. Cal. Mar. 30, 2018) (noting that nationwide, district courts seem to be in agreement that, post–[Ziglar], prisoners have no right to bring a Bivens action for violation of the First Amendment)).

Accordingly, Plaintiff fails to state a claim for retaliation or denial of access to courts under the First Amendment. These deficiencies are not subject to cure by amendment of the complaint and therefore should be dismissed without leave to amend.

### C. Fifth Amendment Due Process -- SHU Term, Loss of Indigent Status, Appeals Process

Plaintiff brings claims for violation of his rights under the substantive and procedural clauses of the Fifth Amendment. The Due Process Clause of the Fifth Amendment provides that no person "shall be deprived of life, liberty, or property, without due process of law." U.S. Const. amend. V. The due process guarantees of the Fifth Amendment "include a substantive component, which forbids the government to infringe certain 'fundamental' liberty interests at all, no matter what process is provided, unless the infringement is narrowly tailored to serve a compelling state interest." Reno v. Flores, 507 U.S. 292, 301–02 (1993) (emphasis omitted). "A threshold requirement to a substantive or procedural due process claim is [a] plaintiff's showing of a liberty or property interest protected by the Constitution." Wedges/Ledges of Cal., Inc. v. City of Phoenix, 24 F.3d 56, 62 (9th Cir. 1994); Wilkinson v. Austin, 545 U.S. 209, 221, 125 S.Ct. 2384, 2393 (2005).

The Supreme Court has never recognized a Bivens remedy for a Fifth Amendment due process claim relating to the alleged failure of a prison official to provide due process, or

11

extended Bivens to a case involving the substantive and procedural clauses of the Fifth Amendment. Lanuza, 899 F.3d at 1026. The Ninth Circuit, however, found a Bivens remedy available in a case concerning an individual attorney's violation of the plaintiff's due process rights in a routine immigration proceeding. Id. at 1027.

Here, Plaintiff alleges that he was placed in the SHU without a finding of probable cause and detained in the SHU without a hearing. Plaintiff also alleges that his status as an indigent inmate was wrongfully changed, which caused him to lose privileges he was entitled to under indigent status. In addition, Plaintiff alleges that Defendants failed to properly process his administrative complaints.

"[T]he first question a court must ask in a case like this one is whether the claim[s] arise[] in a new Bivens context, i.e., whether the case is different in a meaningful way from previous Bivens cases decided by [the Supreme] Court." Ziglar, 137 S.Ct. at 1864 (internal quotation marks and citation omitted). "[A] case can present a new context for Bivens purposes if it implicates a different constitutional right; if judicial precedents provide a less meaningful guide for official conduct; or if there are potential special factors that were not considered in previous Bivens cases." Id. Here, Plaintiff's Fifth Amendment due process claims clearly present new contexts in Bivens.

The court next looks to whether special factors counsel judicial hesitation. Id. at 1857. Judicial hesitation is appropriate where there are valid, alternative remedies available. Id.; see Vega, 881 F. 3d at 1154. As with Plaintiff's First Amendment claims, Plaintiff had alternative remedies available to him, including the BOP's administrative grievance process, which Plaintiff alleges that he utilized in this case. Where Congress has established an alternative remedial structure to protect a constitutional right, the Supreme Court has strongly cautioned that the courts should not create a second remedy. See id. at 1154–55 (declining to recognize Bivens action for due-process violation when alternative remedial structures were available). Thus, the availability of alternative remedies to Plaintiff counsels against the creation of a Bivens remedy in this case. Therefore, the court declines to imply a Bivens remedy under the Fifth Amendment against defendants in this action and finds that Plaintiff fails to state a Bivens claim under the

Fifth Amendment for violation of due process based on Plaintiff's SHU term, loss of indigent status, or improper processing of his administrative complaints Plaintiff is unable to cure the defects in his due process claims with any amendment. Therefore, Plaintiff's Fifth Amendment claims should be dismissed with prejudice, without leave to amend.

        **D.**     **Eighth Amendment Conditions of Confinement -- No Access to Basic Supplies**

The nature of Plaintiff's Eighth Amendment claims includes assertions that he was denied basic supplies such as soap, toothpaste, deodorant, razors, shampoo, writing paper, and envelopes, for more than forty days, despite several requests to defendants Lyons, Padgett, and Copus.

As indicated above, in Carlson, the Supreme Court extended Bivens to a claim arising from the Cruel and Unusual Punishments Clause of the Eighth Amendment based on the failure to provide adequate medical treatment. 446 U.S. 14. In this case, Plaintiff's claim under the Eighth Amendment that correctional officers failed to provide him with basic supplies is not exactly the same as a claim for deliberate indifference to a serious medical need. See Carlson, 446 U.S. at 16 n.1. The mere fact that Plaintiff alleges a violation of a constitutional right does not conclusively establish that Bivens extends to Plaintiff's constitutional claim. Therefore, the court must determine whether Plaintiff's claim presents a "new Bivens context." Abbasi, 137 S.Ct. at 1860. The Abbasi Court explained that "[i]f the case is different in a meaningful way from the previous Bivens cases decided by this Court, then the context is new." Id. at 1859. Although the Abbasi Court did not provide "an exhaustive list of differences that are meaningful enough to make a given context a new one," the Court did provide the following "instructive" examples:

> A case might differ in a meaningful way because of the rank of the officers involved; the constitutional right at issue; the generality or specificity of the official action; the extent of judicial guidance as to how an officer should respond to the problem or emergency to be confronted; the statutory or other legal mandate under which the officer was operating; the risk of disruptive intrusion by the Judiciary into the functioning of other branches; or the presence of potential special factors that previous Bivens cases did not consider.

Id. at 1859-60.

In <u>Carlson</u>, the plaintiff brought a <u>Bivens</u> suit under the Eighth Amendment on behalf of her deceased son's estate, alleging that while her son was a prisoner in a federal prison in Indiana, he suffered personal injuries from which he died because prison officials failed to give him proper medical attention. <u>Carlson</u>, 446 U.S. at 14.

Here, Plaintiff brings a <u>Bivens</u> suit under the Eighth Amendment alleging that three prison officials -- a hearing officer, a correctional officer, and a counselor -- denied his requests to be provided with basic supplies for more than forty days.

Both <u>Carlson</u> and the case at hand concern violation of the Eighth Amendment, which protects against the infliction of "cruel and unusual punishments." U.S. Const. amend. VIII. In <u>Carlson</u>, the plaintiff claims that prison officials failed to provide him with medical care, while in this case Plaintiff claims that prison officials failed to provide him with basic necessities. Both cases involve direct Eighth Amendment allegations against individual officers for specific actions taken against an individual inmate. Further, in both cases a damages remedy is appropriate. <u>Carlson</u>, 446 U.S. 14. Based on these facts, the court finds that Plaintiff's similar direct Eighth Amendment claim here is not a <u>Bivens</u> expansion. Accordingly, the undersigned finds that Plaintiff's Eighth Amendment claim does not present "a new <u>Bivens</u> context."

Nonetheless, even if Plaintiff proceeds with his claim under <u>Bivens</u>, he fails to state a claim because Plaintiff's deprivation does not rise to the level of an Eighth Amendment claim. As a general matter, prohibited punishments include those which "involve the unnecessary and wanton infliction of pain." <u>Estelle v. Gamble</u>, 429 U.S. 97, 203, 97 S.Ct. 285, 290 (1976) (quoting <u>Gregg v. Georgia</u>, 428 U.S. 153, 173, 96 S.Ct. 2909, 2925 (1976). Only those conditions depriving inmates of "the minimal civilized measure of life's necessities" are sufficiently grave to form the basis of an Eighth Amendment violation. <u>Rhodes v. Chapman</u>, 452 U.S. 337, 347, 101 S.Ct. 2392, 2399 (1981). The Eighth Amendment does not mandate comfortable prisons." <u>Id.</u> As the Supreme Court held in <u>Hudson</u>, "Because routine discomfort is 'part of the penalty that criminal offenders pay for their offenses against society,' <u>Rhodes</u>, 452 U.S. at 347, 'only those deprivations denying "the minimal civilized measure of life's necessities" are sufficiently grave to form the basis of an Eighth Amendment violation." <u>Hudson v. McMillian</u>, 503 U.S. 1,

9, 12 S.Ct. 995, 1000 (1992) (internal citations omitted). Plaintiff was not denied "the minimal civilized measure of life's necessities" when he did without soap, toothpaste, deodorant, razors, shampoo, writing paper, and envelopes for approximately forty days. There are no allegations of any injury resulting from the deprivation. Therefore, the allegations in Plaintiff's Complaint do not present a claim of constitutional magnitude, and Plaintiff fails to state a cognizable Eighth Amendment claim.

### E. No Damages for Emotional Distress

Plaintiff is advised that the Prison Litigation Reform Act provides that "[n]o Federal civil action may be brought by a prisoner confined in jail, prison, or other correctional facility, for mental and emotional injury suffered while in custody without a prior showing of physical injury." 42 U.S.C. § 1997e(e). The physical injury "need not be significant but must be more than *de minimis*." Oliver v. Keller, 289 F.3d 623, 627 (9th Cir. 2002) ) (back and leg pain and canker sore *de minimis*); see also Pierce v. County of Orange, 526 F.3d 1190, 1211-13 (9th Cir. 2008) (bladder infections and bed sores, which pose significant pain and health risks to paraplegics such as the plaintiff, were not *de minimis*). The physical injury requirement applies only to claims for mental or emotional injuries and does not bar claims for compensatory, nominal, or punitive damages. Id. at 630. Therefore, Plaintiff is not entitled to monetary damages in this case for emotional distress unless he also shows a physical injury. Here, Plaintiff does not allege any physical injury in the complaint.

### F. Attorney's Fees

Plaintiff has requested an award of attorney's fees as relief. With regard to attorney's fees, "In any action or proceeding to enforce a provision of section[] 1983 . . . , the court, in its discretion, may allow the prevailing party . . . reasonable attorney's fees . . . ." 42 U.S.C. § 1988(b). Plaintiff's contention that he is entitled to attorney's fees if he prevails in this action is without merit.

First, because Plaintiff is not represented by an attorney, he is not entitled to recover attorney's fees if he prevails. See Friedman v. Arizona, 912 F.2d 328, 333 n.2 (9th Cir. 1990), superseded by state statute in Warsoldier v. Woodford, 418 F.3d 989 (9th Cir. 2005); Gonzalez

v. Kangas, 814 F.2d 1411, 1412 (9th Cir. 1987); see also Rickley v. Cnty. of Los Angeles, 654 F.3d 950, 954 (9th Cir. 2011) ("The Court accordingly adopted a per se rule, categorically precluding an award of attorney's fees under § 1988 to a pro se attorney-plaintiff.")

Second, Plaintiff may not be awarded attorney's fees under § 1988(b) because § 1988(b) is only applicable to § 1983 actions, and Plaintiff's case is a Bivens action, not a § 1983 action. The court finds no statute, or any other authority, comparable to § 1988(b) that provides for the award of attorney's fees in Bivens cases. See Kreines v. United States, 33 F.3d 1105, 1109 (9th Cir. 1994) (citing see Lauritzen v. Lehman, 736 F.2d 550, 553-54 (9th Cir. 1984) (attorney's fees under EAJA's § 2412(b) are not available when suit is against federal officers despite analogy to § 1983 and § 1988).

**V. CONCLUSION AND RECOMMENDATIONS**

The court finds that Plaintiff's First Amended Complaint fails to state a claim upon which relief may be granted under Bivens. The court also finds that the deficiencies outlined above are not capable of being cured by amendment, and therefore further leave to amend should not be granted. 28 U.S.C. § 1915(e)(2)(B)(ii); Lopez v. Smith, 203 F.3d 1122, 1127 (9th Cir. 2000).

Based on the foregoing, it is **HEREBY RECOMMENDED** that:

1. Plaintiff's First Amended Complaint be dismissed, with prejudice, for failure to state a Bivens claim upon which relief may be granted;
2. This dismissal be subject to the "three-strikes" provision set forth in 28 U.S.C. § 1915(g). Silva v. Vittorio, 658 F.3d 1090, 1098 (9th Cir. 2011); and
3. The Clerk be directed to close this case.

These findings and recommendations are submitted to the United States District Judge assigned to the case, pursuant to the provisions of Title 28 U.S.C. § 636(b)(l). **Within fourteen (14) days** from the date of service of these findings and recommendations, Plaintiff may file written objections with the court. Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendations." Plaintiff is advised that failure to file

///

///

objections within the specified time may result in the waiver of rights on appeal. <u>Wilkerson v. Wheeler</u>, 772 F.3d 834, 838-39 (9th Cir. 2014) (citing <u>Baxter v. Sullivan</u>, 923 F.2d 1391, 1394 (9th Cir. 1991)).

IT IS SO ORDERED.

Dated: **October 18, 2018**  /s/ **Gary S. Austin**
UNITED STATES MAGISTRATE JUDGE